



FILED

AUG 06 2021

US DISTRICT COURT
DISTRICT OF NEVADA



SEALED

Office of the United States Attorney
District of Nevada
501 Las Vegas Boulevard, Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336

**FILED**

AUG 0 6 2021

US DISTRICT COURT
DISTRICT OF NEVADA

1  GUSTAV W. EYLER
   Director
2  WEI XIANG
   MEREDITH HEALY
3  Trial Attorneys
   U.S. Department of Justice
4  Consumer Protection Branch
   PO Box 386
5  Washington, DC  20044
   Tel: (202) 532-4140; Fax: (202) 514-8742
6  wei.xiang@usdoj.gov
   meredith.b.healy@usdoj.gov
7
   CHRISTOPHER CHIOU
8  Acting United States Attorney
   Nevada Bar No. 14853
9  MINA CHANG
   Assistant United States Attorney
10 501 Las Vegas Boulevard South, Suite 1100
   Las Vegas, Nevada 89101
11 Tel: (702) 388-6336
   Fax: (702) 388-6418
12 mina.chang@usdoj.gov
   *Attorneys for the United States of America*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.   2:21-mj-0670-NJK |
| Plaintiff, | **COMPLAINT** for violations of: Conspiracy (18 U.S.C. § 371) |
| v. | |
| HAROLD DAVID SOBEL, | False Statement to a Bank (18 U.S.C. § 1014) |
| Defendant. | **(Filed Under Seal)** |

BEFORE the United States Magistrate Judge, Las Vegas, Nevada, the undersigned Complainant, being duly sworn, deposes and states:

///

///

## COUNT ONE
*Conspiracy*
(18 U.S.C. § 371)

1. Beginning in or about September 2019 and continuing until in or about February 2020, the exact dates being unknown, within the District of Nevada and elsewhere,

**HAROLD DAVID SOBEL,**

the defendant herein, did knowingly and willfully conspire with other persons known and unknown to commit an offense against the United States, that is, False Statement to a Bank, in violation of 18 U.S.C. § 1014.

2. At all times relevant to this Criminal Complaint, Bank-1, Bank-2, and Bank-3 (collectively, the "Target Banks") were financial institutions insured by the Federal Deposit Insurance Corporation.

3. The defendant, HAROLD DAVID SOBEL ("SOBEL"), and a person referred to hereinafter as "CC-1" coordinated with each other to deceive each of the Target Banks. SOBEL opened, and served as a nominal owner of, bank accounts at the Target Banks for CC-1. Allowing CC-1 to then masquerade as SOBEL in remote communications with the Target Banks, SOBEL schemed with CC-1 to deceive each of the Target Banks, and to influence actions by each of the Target Banks, as to accounts opened by SOBEL for CC-1.

4. In furtherance of the conspiracy and to effect the object of the conspiracy, the following overt acts, among others, were committed in the District of Nevada and elsewhere:

    a. On or about October 16, 2019, in the District of Nevada, SOBEL opened accounts at Bank-1.

b.   On or about October 16, 2019, in the District of Nevada, SOBEL opened accounts at Bank-3.

c.   On or about October 17, 2019, in the District of Nevada, SOBEL opened accounts at Bank-2.

d.   On or about October 20, 2019, CC-1 sent an email to SOBEL requesting SOBEL to change the profile emails for the bank accounts opened by SOBEL from SOBEL's to CC-1's.

e.   On or about October 21, 2019, SOBEL forwarded to CC-1 an email from Bank-1 that contained a list of questions and requests from Bank-1, including a request for three months of bank statements.

f.   On or about October 23, 2019, CC-1 responded to Bank-1, falsely claiming, among other things, to be a startup that could not provide any bank statements.

g.   On or about October 23, 2019, CC-1 forwarded to SOBEL an email that CC-1 had received from Bank-2 attaching the bank's wire transfer form. CC-1 requested SOBEL to sign 20 of them and send to CC-1.

h.   On or about January 27, 2020, CC-1 forwarded to SOBEL an email that CC-1 had sent to Bank-3, so that SOBEL would "have the same story line" when meeting with bank personnel.

i.   On or about February 3, 2020, SOBEL traveled from Ukraine to the United States.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
*False Statement to a Bank*
(18 U.S.C. § 1014)

5.   On or about October 23, 2019, within the District of Nevada and elsewhere,

3

HAROLD DAVID SOBEL,

the defendant herein, did knowingly make and cause to be made a false statement for the purpose of influencing the action of Bank-1, a federally insured institution, in connection with an application or any change or extension of any of the same, by renewal, deferment of action or otherwise, in that CC-1 stated in an email to Bank-1 that SOBEL had no bank statements to provide to Bank-1 on account of being a startup, when in truth and in fact, as SOBEL and CC-1 well knew, SOBEL and CC-1 had bank statements to provide.

All in violation of 18 U.S.C. §§ 1014 and 2.

### COUNT THREE
*False Statement to a Bank*
(18 U.S.C. § 1014)

6. On or about January 27, 2020, within the District of Nevada and elsewhere,

HAROLD DAVID SOBEL,

the defendant herein, did knowingly make and cause to be made a false statement for the purpose of influencing the action of Bank-1, a federally insured institution, in connection with an application or any change or extension of any of the same, by renewal, deferment of action or otherwise, in that CC-1 stated in an email to Bank-3, that no one other than SOBEL logs in to the accounts opened by SOBEL at the bank when in truth and in fact, as SOBEL and CC-1 well knew, CC-1 also logged in to those accounts.

All in violation of 18 U.S.C. §§ 1014 and 2.

### PROBABLE CAUSE

Complainant, Ashlea R. Bowens, states the following as and for probable cause:

7. I am a Postal Inspector with the United States Postal Inspection Service ("USPIS"). I have been employed as a Postal Inspector since 2012. I am currently assigned to the U.S. Department of Justice ("DOJ"), Consumer Protection Branch to investigate

4

fraud schemes targeting American consumers in violation of federal law. Since being employed as a Postal Inspector, I have led, conducted and/or participated in criminal investigations involving Mail Fraud, Wire Fraud, Government Impersonation, Mail Theft, Identity Theft, Assault, Robbery, and Homicide. I have also successfully completed various training programs provided by the USPIS and the DOJ, including in Money Laundering and Asset Forfeiture.

8. I make this affidavit in support of a criminal complaint charging the defendant, HAROLD DAVID SOBEL, with violations of 18 U.S.C. § 371 (conspiracy) and 18 U.S.C. § 1014 (false statement to a bank).

9. This affidavit is based upon my personal knowledge, my review of documents and other evidence, and my conversations with other law enforcement agents and civilian witnesses. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

A. **Background on SOBEL and Entity-1**

10. According to information from the Nevada Department of Motor Vehicles, the defendant, HAROLD DAVID SOBEL ("SOBEL"), was born in 1953. A United States citizen with a Nevada driver's license issued on October 17, 2019, SOBEL resides in Ukraine, but arrived in Las Vegas from Ukraine on or about July 22, 2021 and is believed to currently be in Nevada. Based on my review of email, financial, and other records as discussed below, I believe that SOBEL used the following three email accounts: bullycoco@gmail.com, bullycoco@yahoo.com, and bullycoco@protonmail.com

5

(respectively, the "Sobel Gmail," the "Sobel Yahoo," and the "Sobel Protonmail" addresses).

11. According to publicly accessible information from the Nevada Secretary of State, a limited liability company referred to hereinafter as "Entity-1" filed its articles of organization in 2017. State corporate filings for Entity-1 list a single individual: starting June 2019, HAROLD SOBEL held the title of "Manager," with a listed address in Las Vegas that I know to be a virtual office.

12. As will be shown below, SOBEL served as a nominal owner of Entity-1 for a foreign individual referred to hereinafter as "CC-1." Based on my knowledge of the evidence gathered in this investigation, I believe that CC-1 (whose name contains neither "Harold" nor "Sobel") used multiple email addresses, including two that are discussed in this affidavit. One of those addresses contained CC-1's first name and is referred to hereinafter as the "CC-1 Address." The other address contained SOBEL's first name and the name of Entity-1, and is referred to hereinafter as the "Imposter Address." Among other means and methods of their conspiracy, SOBEL opened bank accounts in the United States, including at federally insured financial institutions in the District of Nevada, unbeknownst to the banks for CC-1's use and not SOBEL's use, while CC-1 used the Imposter Address to communicate with the banks, pretending to be SOBEL.

**B.    Activity at and Communications with Bank-1**

13. At all times relevant to this criminal complaint, "Bank-1" was an FDIC-insured institution. Based on my review of email and bank records as discussed below, I believe that on or about October 16, 2019, SOBEL opened accounts in the name of Entity-1 at a Bank-1 location in Las Vegas, Nevada.

14. On or about October 18, 2019, Bank-1 personnel sent an email to the Sobel Gmail address ("Bank-1 10/18/19 email"). Under the subject line, "Additional Information Needed," the email started, "Hello Harold, Per our conversation this afternoon, below is the list of items we are requesting to move forward with an active account at [Bank-1]." The email then itemized six questions and requests as follows:

> -The physical address you provided for yourself is for a virtual office. We will need your personal physical address.
> -Are your servers located at the [address] office? If not where are they located?
> -Please explain in more detail what each DBA account is for, including explanation of expected transactions.
> -Please provide 3 months of bank statements for each account
> -Who is the ACH processor you are using?
> -What is the ACH chargeback volume?

15. On or about October 21, 2019, SOBEL forwarded Bank-1's email to CC-1 at the CC-1 Address. SOBEL additionally wrote, "please change phone and emails when tespondinv [sic] tto [sic] the back office's questions below. Thx H."

16. On or about October 22, 2019, SOBEL from the Sobel Protonmail address emailed CC-1 at the CC-1 Address, stating in part, "I forwarded [Bank-1]'s e-mail to you, which requires two things... [ellipses in original] updating, as I've done already, the phone # and e-mail address in writing. Then it requires answering the questions they asked. All this in one e-mail from you back to them."

17. On or about October 23, 2019, CC-1 responded to the Bank-1 10/18/19 email from the Imposter Address, copying the CC-1 Address. Signed "Harold Sobel," the response stated in part:

> We cannot provide any bank statements at this time as we are a startup .....
> [ellipses in original] will provide as we start processing. . . . Our projected CB will be under the .10 .... [ellipses in original] which is way below NACHA regulations/tolerance. The other three accnts will be used to wholesale our products through witha [sic] small admin fee .... [ellipses in original] ACH

7

> charges will be from 1.35, 1.75, 1.85 per ach …[ellipses in original] aprox [sic] 1500 to 2250 a day or so in the combined 3 accnts …. [ellipses in original] we call those <u>lost leaders</u> ….[ellipses in original] hope this help you understand our marketing strategies

(emphasis added).

18.   Based on my knowledge of the evidence gathered in this investigation, as further discussed below, I know that this response to Bank-1 contained at least one false statement. SOBEL and CC-1 did have bank statements to provide to Bank-1. For example, SOBEL had opened accounts for Entity-1, similarly listing himself as manager on the account signature cards, at a different FDIC-insured financial institution ("Bank-4") in Las Vegas in 2018. According to records from Bank-4 for these accounts, statements exist, showing activity into 2019. Furthermore, SOBEL and CC-1 both knew of the Bank-4 accounts, as one of the accounts had a negative balance and emails between SOBEL and CC-1 on and before October 10, 2019 included discussions of trying to restore the account.

19.   CC-1, from the CC-1 Address, then forwarded CC-1's above response to SOBEL at the Sobel Protonmail address, along with some comments and questions. On or about October 25, 2019, SOBEL, from the Sobel Protonmail address, responded to CC-1 in part, "Your answer is good. It would be better if you give me an opportunity to comment and edit before you send things in the future, as there are a few errors (not important). <u>Loss leaders</u>, not <u>lost leaders</u>." (emphasis added).

20.   Bank-1 records show that Bank-1 personnel believed the statement in CC-1's October 23, 2019 email that "[w]e cannot provide any bank statements at this time as we are a startup" to be false. Internal Bank-1 emails demonstrate that Bank-1 personnel investigated and rejected this claim. For example, in an October 23, 2019 email between Bank-1 personnel, a Bank-1 personal banking officer wrote, "[Entity-1] has a full established

8

website, he insist [sic] he's a startup but was also able to provide transaction information regarding ach's. I don't believe this is a startup and if it is, why can't he provide statements to show how they have gotten this far." The Bank-1 personal banking officer elaborated, "[Entity-1] is already operating and accepting payments online, however he keeps trying to say it's a startup, where are those payments currently going. Once we started asking questions he started acting like he was unsure of how things would operate but he is already operating." Bank-1 emails and other records reflect that Bank-1 determined that the accounts "may be a risk for the bank," and closed the accounts on or about October 25, 2019.

21. Also on or about October 25, 2019, Bank-1 replied to CC-1's response, stating in part, "Good Afternoon Harold, I appreciate you responding to the questions we had. Unfortunately we are going to close the accounts. The risk associated with your business type is too high for a bank of our size to service at this time."

### C. Activity at and Communications with Bank-2

22. At all times relevant to this criminal complaint, "Bank-2" was an FDIC-insured institution. On or about October 17, 2019, SOBEL opened accounts in the name of Entity-1 and three DBAs of Entity-1 at a Bank-2 location in Ely, Nevada. The account opening documentation identified SOBEL as the CEO of Entity-1 and its DBAs, and the accounts' sole authorized signer.

23. On or about October 22, 2019, SOBEL, from the Sobel Protonmail address, emailed to CC-1 at the CC-1 Address the names and account numbers for the four Bank-2 accounts.

24. On or about October 23, 2019, Bank-2 personnel sent an email to the Imposter Address attaching Bank-2's wire transfer form. CC-1 from the Imposter Address

forwarded the email to SOBEL at the Sobel Protonmail address, stating in part, "When you get home .... [ellipses in original] Sign 20 of them, and send them to me."

### D. Activity at and Communications with Bank-3

25.     At all times relevant to this criminal complaint, "Bank-3" was an FDIC-insured institution. On or about October 16, 2019, SOBEL opened accounts in the name of Entity-1 and three DBAs of Entity-1 at a Bank-3 location in Las Vegas, Nevada. Among the account opening documentation was a copy of the articles of organization for Entity-1, listing a single manager or managing member, SOBEL. On the accounts' signature card, SOBEL also listed himself as "sole member" of Entity-1 and the accounts' sole authorized signer.

26.     On or about January 27, 2020, CC-1 from the Imposter Address sent an email ("1/27/20 Imposter Address email") to Bank-3 that was signed "Harold Sobel" and stated:

> Hello [Bank-3 personnel]
> We just spoke .... [ellipses in original] And I am shocked that my accnts [sic] are frozen !
> I just left Saturday .... [ellipses in original] And I find out today there is a problem and you want me to walk into the branch to identify myself ! ... [ellipses in original] wish you would have mentioned that on Friday !
> In any case .... [ellipses in original] What is important in the moment is that the transactions that were sent out Friday, and hitting the account today not be returned
> If you were to return them, this would cause us serious issues and irreparable damages
> Firstly each returned item to our processor would cost us 6.50 per item ( We have 2800 items ... [ellipses in original] so that would be 6.50 per return 18,200$  in return fees )
> Secondly it would jeopardize our relationship with our processor and his bank
> We have over 35,000 in the combined account we have with you ... [ellipses in original] so sufficient monies to cover the 2,750 $ needing to be debited from our accnt [sic]
> Please confirm that no items will be returned
> WE will not process any more transactions until I see you at the branch
> Harold Sobel

27. CC-1 from the Imposter Address then forwarded the 1/27/20 Imposter Address email to SOBEL at the Sobel Protonmail address. In the forwarding email, CC-1 stated:

> Harold
> Here is what I just sent [Bank-3 personnel] …. [ellipses in original] Keep this in your docs …. [ellipses in original] As we have to have the same story line when you meet [Bank-3 personnel]
> Which e.mail of the above did you give the bank?
> …
> P.S. PLEASE …. [ellipses in original] Never ever give personal e.mail addresses ….. [ellipses in original] I had given you the one to use for [name of Entity-1] ([Imposter Address])

28. On or about January 27, 2020, SOBEL at the Sobel Protonmail address responded, "Ok."

29. On or about January 27, 2020, Bank-3 personnel responded to the 1/27/20 Imposter Address email, stating:

> Mr Sobel,
> I'd like to start off by saying your accounts are not frozen. Transactions coming through your accounts are not affected. Nothing has been returned. This is only for Treasury Express. Due to Our regulations, If you are not the only one accessing Treasury Express and have shared your used [sic] ID and Password with someone else you must assign a sub user giving them access. We will still need you to come into the branch so that we can verify you. This is strictly for your protection.

30. CC-1 from the Imposter Address then responded:

> MY GOD … [ellipses in original] you really scared me !
> So if I understand …. [ellipses in original] Only my online access is affected, not my day to day transactions ? … [ellipses in original] correct ?
> I am planning to be back on the 4th or the 5th of February and will come see you as soon as I arrive back home
> Real sorry for the inconvenience
> NO one else then [sic] me logs in …. [ellipses in original] I think you may have misunderstood what I said, but nevertheless will not [sic] longer use any other servers to login except my US one !
> Thank you for the quick response
> Regards
> Harold

31. Based on my knowledge of the evidence gathered in this investigation, I know that this response to Bank-3 contained at least one false statement. CC-1's statement to Bank-3, when pretending to be SOBEL, that "NO one else then [sic] me logs in" was false. Emails between SOBEL and CC-1 showed that CC-1 logged into the accounts. For example, on or about October 20, 2019, CC-1 from the Imposter Address sent an email to SOBEL at all three of SOBEL's email accounts in which CC-1 indicated that he was able to log in to the Bank-3 account.

32. Bank-3 further responded,

> [T]he answer to your question is yes, only the Treasury express is affected not your day to day transactions.
> I will note on your accounts that you are out of the country until Feb 5th. I will see you when you get back.

33. Emails between SOBEL and CC-1 show that SOBEL returned to the United States in February 2020 to present himself to Bank-3, as well as to open additional accounts at other financial institutions. For example, on or about February 3, 2020, SOBEL at the Sobel Protonmail address sent an email to CC-1 at the CC-1 address in which he stated:

> Arrived after 26 hours!! Boston to l.v. Was delayed an hour. Customs uneventful, as was getting car for just 25% of domestic rate, including cdw, with my "foreign" drivers license and "foreign" passport. I spoke Hebrew and told them it was Ukrainian. Going to [Bank-3 personnel] att [sic] [Bank-3] at around 10:30… [ellipses in original] AFTER my $1 Egg Mcmufins [sic]. Then SIM card

E. **Further Communications between SOBEL and CC-1 on Scheme**

34. Emails between SOBEL and CC-1 demonstrate that SOBEL took steps to evade detection by law enforcement when he entered the United States in October 2019 to open financial accounts. On or about October 7, 2019, SOBEL at the Sobel Yahoo address sent an email to CC-1 at the CC-1 address in which SOBEL stated:

> Be aware that I arrive Wednesday at 11 P.M., and by the time I get the rental car and hotel, it will be at least 1 a.m., so I'll get started a bit later on Thursday after the 23 hour sojourn.?? Remember, I do NOT have a SIM card when I arrive, and buying one is the first thing that I need to do on Thursday.?? <u>When passing through the Gestapo I wipe my phone, so when I arrive I will reinstall Skype, Signal, and Whatsapp.</u>?? Don't get edgy if I'm out of reach briefly. If I'm missing, the first stop in the U.S. is Houston Int'l Airport, FYI.?? I will have good communications with you OPEN, once I set them up.?? The hotel has wifi, so even w/o a SIM card can install the messaging/call apps upon arrival.??

(emphasis added).

35. Skype, Signal, and WhatsApp are communications applications. From emails between SOBEL and CC-1, I know that they used these applications to communicate with each other. I believe, by the above-underlined sentence, that SOBEL took active measures to avoid the potential of government personnel seeing or copying his incriminating messages with CC-1 when SOBEL passed through customs.

36. Other emails between SOBEL and CC-1 show that CC-1 paid SOBEL to make the October 2019 trip to the United States to open new bank accounts following closures and other issues with older accounts.

37. For example, on or about October 16, 2019, SOBEL from the Sobel Gmail address sent an email to CC-1 at the CC-1 Address, updating CC-1 on some banking activities.

    a. SOBEL reported visiting two financial institutions where they had older accounts, and both banks terminated the accounts. SOBEL reported that, for Bank-4, the termination decision came from its "underwriting/back office" and that, for the other, the bank simply "REFUSED to do any further business with us."

    b. SOBEL then reported progress on Bank-1, Bank-2, and Bank-3, remarking, "so if all goes according to plan, you will have more than enough banks, right?

13

It would be easy to be lazy and stupid and tell you there are no banks with free ACH . . . , but thank God I am an alpha and not a drama queen."

   c. SOBEL concluded with a listing of expenses and reminder of his "salary".

  38. Furthermore, on or about October 20, 2019, CC-1 from the Imposter Address, copying the CC-1 Address, sent an email to SOBEL at all three of SOBEL's email accounts, under subject line, "BIG ISSUE":

   a. CC-1 complained, "You have put your personal e.mail [sic] and YOUR temp phone nos to all bank accnts ! This makes them un-useable for me !"

   b. CC-1 then asked SOBEL to change all of the bank account profile emails to the Imposter Address, stating, "otherwise this trip will have been for nothing."

   c. CC-1 ended by saying, "Will need you to UPS everything you have in hand to an address I will give you in Cyprus ….debit cards, checks….and all banking material."

   d. SOBEL responded from the Sobel Protonmail address, "Undestand [sic] everything. First thing tomorrow."

39. Based on the foregoing, there is probable cause to believe that, on or about the dates above, the defendant, HAROLD DAVID SOBEL, did violate 18 U.S.C. § 371 (conspiracy) and 18 U.S.C. § 1014 (false statement to a bank).

*Ashlea R. Bowens, Postal Inspector*
U.S. Postal Inspection Service

Attested to and sworn before me on August 6, 2021.

HONORABLE NANCY J. KOPPE
UNITED STATES MAGISTRATE JUDGE